# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0614V

| | |
|---|---|
| THOMAS HASHEM,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br><br>Filed: November 17, 2025 |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*Benjamin Patrick Warder, U.S. Department of Justice, Washington, DC,* for Respondent.

### DECISION DISMISSING PETITION[1]

On January 12, 2021, Thomas Hashem filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that as a result of a tetanus and diphtheria ("Td") vaccine he received on September 13, 2019, he suffered a left shoulder injury related to vaccine administration ("SIRVA") as defined by the Vaccine Injury Table (the "Table").[3] Petition

---

[1] Because this decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means this Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] Petitioner filed his first amended petition (ECF No. 23) on July 28, 2022. The first amended petition provides an expanded set of facts based on petitioner's medical records; however, it contains no changes to the legal allegations made in this case. *See* ECF No. 23.

(ECF No. 1) at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

On July 24, 2023, Respondent filed a Rule 4(c) Report detailing its entitlement opposition and a Motion to Dismiss. Respondent's Report dated July 24, 2023 (ECF No. 33-34) ("Rule 4/Mot."). Specifically, Respondent argued that Petitioner could not meet the 48-hour onset requirement for a SIRVA claim, and that the six-month statutory severity requirement was not met since there was a treatment gap of approximately 19 months. *Id*. at 4.

Thereafter, I set a deadline for Petitioner to file a response to the Motion to Dismiss and Rule 4(c) Report. *Non-PDF Scheduling Order dated July 25, 2023*. Petitioner did not do so.

I. **Relevant Medical History**

   1. **Medical Records**

Mr. Hashem was 49 years-old when he received a Td vaccine intramuscularly in his left deltoid at Lake Scranton Urgent Care ("LSUC") on September 13, 2019. Petitioner's Exhibit ("Ex.") 3 at 2-3. He had gone to LSUC that day for treatment of a puncture wound located in his right buttock. *Id*. Petitioner did not have any history of pain, injury, or dysfunction in his left shoulder. Ex. 4 at 7-10.

On October 8, 2019 (now 25 days after his receipt of the relevant vaccine), Mr. Hashem saw his primary care provider, Gerard Nealon, M.D., at to Delta Medix for a complaint of "legs hurt while standing." Ex. 4 at 6. Dr. Nealon also noted that Petitioner complained of pain in his left shoulder after his receipt of the vaccination. *Id*. Dr. Nealon's impression included left shoulder pain secondary to his receipt of the Td vaccination, and he prescribed Naproxen. *Id*.

A little more than a month later, on November 18, 2019, Mr. Hashem returned to Dr. Nealon for a follow-up appointment for his hypertension, anxiety, and left shoulder pain. Ex. 4 at 5. Dr. Nealon noted that Petitioner had tenderness in his left biceps. *Id*. Dr. Nealon's impression included tendonitis of the left biceps, and he prescribed a prednisone taper. *Id*.

On January 23, 2020, Mr. Hashem returned to Dr. Nealon complaining that he woke up with sore feet and occasional swelling in his ankle. Ex. 4 at 5. Dr. Nealon noted that Petitioner had nodules on his left arm. *Id*. There was no mention of left shoulder pain during this visit. *Id.*

On February 3, 2020, Mr. Hashem returned to see Dr. Nealon reporting that he was "feeling better," but Petitioner did not specify which medical issue(s) had improved. *Id*. There was no mention of left shoulder pain during this appointment. *Id*.

The next medical record is dated July 13, 2021 - more than 19 months later, when Mr. Hashem returned to see Dr. Nealon. Ex. 5 at 2. Dr. Nealon noted that Petitioner complained that he still had pain in his left shoulder, and that it hurt to move his left shoulder. *Id*. Dr. Nealon also noted that Petitioner had reduced range of motion in his left shoulder. *Id*. Dr. Nealon's impression included left shoulder bursitis, and he directed Petitioner to participate in physical therapy. *Id*.

There are no additional records filed in this case for treatment received after July 13, 2021, that mention Petitioner's left shoulder injury.

### 2. Petitioner's Declaration and Affidavit

In his affidavit, filed on August 16, 2021, Mr. Hashem stated that he sustained left shoulder injuries as a result of his receipt of the Td vaccine on September 13, 2019. Ex. 2 at 1. In his declaration, filed on October 27, 2022, Petitioner stated that his delay in seeking additional treatment after his initial visits with Dr. Nealon was prompted by the COVID-19 Pandemic. Ex. 7 at 1. Petitioner added that he was immunocompromised, and that his physician advised him not to participate in formal, in-person physical therapy. *Id*. Petitioner noted that instead, he had been "regularly performing a home exercise program in an attempt to reach [his] pre-vaccination state." *Id*.

## II. Analysis

Petitioners not asserting a vaccine-related death or other injury requiring a surgical intervention and inpatient care must demonstrate that they suffered the residual effects or complications from their vaccine-related injury for more than six months. Section 11(c)(1)(D); *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011). Petitioners bear the burden of establishing this preponderantly. *Song v. Sec'y of Health & Hum. Servs.*, 31 Fed. Cl. 61, 65–66 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 1994). They cannot establish the length or ongoing nature of an injury solely through personal statements but rather must "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months . . ." *Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995), aff'd, 93 F.3d (Fed. Cir. 1996).

While even mild symptoms that do not require intensive medical care may satisfy the severity requirement, ongoing medical treatment for conditions unrelated to an alleged

vaccine injury do not. *Compare Wyatt v. Sec'y of Health & Hum. Servs.*, No. 14-706V, 2018 WL 7017751, at *22–23 (Fed. Cl. Spec. Mstr. Dec. 17, 2018) (petitioner's post-vaccination GBS resolved within three months; subsequent ongoing medical treatment for upper respiratory and gastrointestinal infections did not satisfy six-month requirement), with *Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) (ongoing mild GBS symptoms that did not require active medical care nevertheless satisfied severity requirement).

Respondent challenges onset and severity – and the latter objection has merit. Because Petitioner received his vaccine on September 13, 2019, and alleges immediate pain (or at least pain within the 48-hour Table timeframe for a SIRVA injury), severity must be established at least through March 13, 2020 (six months after the administration date of September 13, 2019). But as noted described below, the record does not establish that the pain that is documented in late September/October likely persisted beyond *March 2020*.

Thus, in early 2020, Mr. Hashem had two appointments with Dr. Nealon (January 23, 2020 and February 3, 2020) for non-left shoulder related issues, and during which there was no mention of left shoulder pain. *Id*. at 4-5. On March 24, 2020, Mr. Hashem received a urology consultation from Dr. Nealon and again, there is no mention of left shoulder pain. *Id*. at 1. The record is then silent for the next 19 months.

On July 13, 2021, Mr. Hashem returned to Dr. Nealon where he reported pain in his left shoulder. Ex. 5 at 2. In his declaration, Petitioner attributed his delay in seeking additional treatment to the COVID-19 pandemic. Ex. 7 at 1. Petitioner added that he was immunocompromised, and that his physician advised him not to participate in formal, in-person physical therapy. *Id*. However, Mr. Hashem did not explain why he did not complain of left shoulder pain during his two, early-2020 appointments with Dr. Nealon, which occurred on January 23, 2020, and February 3, 2020 - prior to the appearance of the COVID-19 pandemic in the United States. Furthermore, there is no evidence in the record that Dr. Nealon directed Petitioner to participate in physical therapy before July 13, 2021, and there is also no evidence in the record that Petitioner was immunocompromised. The gap in the record is simply too long, and too silent, for me to conclude that six months of severity is established in this case.

As Respondent noted, the facts in this case are very similar to *Black v. Sec'y of Health & Human Servs*, No. 21-009V, 2023 WL 4446500 (Fed. Cl. Spec. Mstr. May 22, 2023). The *Black* petitioner received a flu vaccine in his left shoulder and then suffered documented shoulder pain for approximately three months, from October 31, 2019, to January 29, 2020. *Id*. at *1. Mr. Black had an appointment with his urologist for an

4

unrelated condition in March 2020, during which "[n]o comment was made about shoulder pain." *Id*. at *2. Thereafter, the petitioner did not seek treatment for his left shoulder again until July 7, 2021, more than 17 months after his last appointment for treatment of his shoulder. *Id*. In that case, I explained that, although in many cases I had allowed that,

> the intervention of the Pandemic can reasonably be understood to have caused individuals to put off treatment, especially in the spring of 2020, the gap in this case is too large to be excused for this reason – especially since Petitioner's cessation of treatment began in late-January 2020, and thus somewhat before the real initial impact of the Pandemic began.

Here, as I articulated in the *Black* case, the 19-month gap in the record during which time Mr. Hashem did not seek medical care for his allegedly persistent left shoulder pain "[was] too large to ignore" for his claim to meet the six-month severity requirement. Mr. Hashem only had two months of documented treatment for his left shoulder and then there is no mention of shoulder pain for the next 19 months. Thus, I find that there is insufficient evidence to support a finding that Mr. Hashem suffered the residual effects or complications of his alleged left-sided SIRVA for more than six months after administration of the Td vaccine.

## Conclusion

Based on the entire record in this case, I find that Petitioner has failed to prove by preponderant evidence that his injury or its residual effects lasted more than six months. Accordingly, Petitioner has not established entitlement to an award of damages (under the Table or causation-in-fact version of the claim), and I must DISMISS the claim.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[4]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.